Trout v. Lucas.

# WILLIAM W. TROUT

### v.

# MARGARET E. LUCAS et al.

1. Where the right to enforce building restrictions is of a purely equitable nature, a court of equity will not enforce them by mandatory injunction, unless prompt application is made by the persons entitled to enforce the restrictions.

2. Persons who are owners of the land entitled to the benefit of the restrictions at the time of the violation, are entitled to apply for relief, and their grantees are barred by their acquiescence in the violation or delay in applying for relief.

3. No relief against such violations can be granted upon a bill which discloses such acquiescence and delay, continuing for several years, on the part of complainant's grantors and of complainant himself, and entirely unexplained.

On bill and demurrer.

*Messrs. Hawkins & Durand,* for the complainant.

*Mr. Frank P. McDermott,* for the demurrants.

EMERY, V. C.

The object of this bill is to enforce a covenant relating to building restrictions contained in a conveyance of lands made to one John C. Lucas by the Spring Lake Beach Improvement Company, and to compel the removal of a portion of a hotel building which has been erected beyond the limits fixed by the covenant. The case is heard on demurrer to the bill, which discloses the following facts as the basis for relief: The Spring Lake Beach Improvement Company, which was incorporated for the purpose of developing and improving real estate and the erection of buildings thereon, purchased for these objects a tract of about six hundred acres adjoining the Atlantic ocean, and situate in Wall township, Monmouth county, which it laid out into squares and lots or building sites, designating the tract by the name of Spring Lake. A map of the tract, showing the

streets, avenues and the lots by numbers, was made in 1876 and filed in the office of the clerk of the county. Nearly three years after the purchase, and on January 20th, 1878, the company conveyed to one John C. Lucas lots Nos. 19 and 20, in block No. 21, as shown on the map or plan of lots, being lots adjoining each other, fronting on Atlantic avenue, and one of the lots · (No. 20) being a corner lot fronting also on First avenue. The two lots together constituted one tract fronting one hundred feet on Atlantic avenue and one hundred and fifty feet on First avenue, and being at the northwest corner of said avenues.

The deed contained the following condition, on the part of the grantee, viz.,

"that the party of the second part, for himself, his heirs, executors, administrators and assigns, covenants that he and they shall never build on the said premises within twenty-five feet of the front line thereof on avenues running east and west, and also on Ocean avenue."

Atlantic avenue, on which these Lucas lots front, runs east and west.

In the same year (1878) in which he received his deed, John C. Lucas erected a large frame hotel building on these lots, the building being three stories high, about one hundred feet long and thirty-five feet deep, the front of the building, one hundred feet, fronting on First avenue, and the south end, thirty-five feet, fronting on Atlantic avenue. The south line of the building was only twenty-one feet and seven inches from the front line of Atlantic avenue, instead of twenty-five feet as required by the covenant, being thus three feet and five inches over the line. On March 9th, 1878, about two months after the above conveyance to Lucas, the Spring Lake company conveyed to one David C. Spooner lot No. 11 of the same block (21), this latter lot being on the northeast corner of Atlantic avenue and Second avenue, fronting fifty feet on Atlantic avenue and adjoining lot 12, which was on the east. This deed was, so far as appears by the bill, the first conveyance, after the Lucas deed, of any lots on block 21 on Atlantic avenue, and this deed contained a condition or covenant similar to that contained in the Lucas deed.

The title to this lot No. 11 remained in Spooner or his devisees for nearly eight years and until August 16th, 1886, when it was conveyed by the executor of Spooner to one Thomas A. Ward, and Ward and his wife, on January 9th, 1888, conveyed it to the complainant. The deeds to Ward and the complainant contained the same form of restriction.

On February 1st, 1886, and nearly two years before his purchase of lot No. 11 from Ward, the complainant purchased of the company lots 12, 13, 14 and 15, in block 21, together fronting two hundred feet on the north side of Atlantic avenue and one hundred and fifty feet deep, and his deed for these lots contained the same restriction on his part.

"In the winter of 1885 and 1886," the defendant Lucas, as the bill alleges, reconstructed his hotel building and made additions thereto, one of the additions being an octagon tower, forming part of the building on the south end of said building, commencing at the second floor and extending above the roof and extending outward, southward, from the line of the said building. This tower extends, as the bill states, ten feet south from the line of the building, and is only about eleven feet from the front line of Atlantic avenue. In the following year (1887) the complainant erected houses on two of his lots, twenty-five feet from the front line of the avenue, at a cost of $10,000, and, as the bill says, it was while building his cottages that he discovered the hotel building encroached on the twenty-five feet reserved.

The additional facts alleged in the bill, upon which is based complainant's equity to require a removal of the portion of the Lucas buildings in question, are that the restrictions in the several deeds were created by the company and authorized in the conveyances for the benefit of all the lots and lot-owners on said Atlantic avenue, in block No. 21 ; that Spring Lake is a summer resort sought principally because of its bordering on the ocean ; that the lots of complainant are just west of the Lucas lots, which lie between complainant's lots and the ocean, and that it is necessary to the complainant, for the full use and enjoyment by him of his said premises, that the condition should

be observed and kept by all owners owning lots between complainant's premises and the ocean, and that all buildings erected on their lots should be at least twenty-five feet back from the line of Atlantic avenue. The complainant claims the right of enforcing this condition in equity against the owners, who violated it before his purchase, and to have the portion of the buildings encroaching on the twenty-five feet removed. John C. Lucas having died in August, 1888, his widow and infant heirs are made parties defendant to the bill, which was filed on June 17th, 1889. A general demurrer for want of equity was filed on behalf of all the defendants, with additional specifications of acquiescence, laches and want of parties.

Under the above facts, it seems to me that the whole basis of complainant's right to relief rests upon a right which is, in its nature, purely equitable. The defendants, so far as relates to the condition in question, are not under any legal liability to the complainant, for the reason that there is no privity between them, either of contract or estate. But courts of equity, in relation to restrictions of this character which contemplate a general plan of building for the common benefit of purchasers of lots, recognize the right to enforce them in equity, at the instance of the original grantor or subsequent purchasers of lots, on grounds independent of legal liability. Vice-Chancellor Green, in *De Gray* v. *Monmouth Beach Club House, 5 Dick. Ch. Rep. 329 (1892)*, after a very exhaustive and learned review of the cases, states (at *p. 340*) the principles governing this class of cases where a general plan or scheme is relied on, as follows : " The law, deducible from these principles and the authorities applicable to this case, is that where there is a general scheme or plan adopted and made public by the owner of a tract for the development and improvement of the property, by which it is divided into streets, avenues and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser, and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to

Trout *v.* Lucas.

and to have the benefit thereof, and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan, one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns if he has bought with knowledge of the scheme and the covenant has been part of the subject-matter of his purchase."

The learned vice-chancellor also says (at *p. 340*) "that the equitable right of action seems to be dependent as much on the fact of the general scheme as on the covenant."

This case was approved by Chancellor McGill, in *Hayes* v. *Waverly and Passaic Railroad Co., 6 Dick. Ch. Rep. 345, 348 (1893)*, and the complainant's case is, by the allegations in his bill relating to the object of the restriction, brought within the application of the general rule recognized in these cases. But if the right of the complainant be in its nature a purely equitable right, it is, of course, subject to the application of the general equitable rule that the remedy applied for in the particular case cannot be granted unless it appears to be equitable to grant it. The remedy now sought is the extraordinary one of a mandatory injunction for the removal of a portion of a building, and the vital question in the case, as I look at it, is whether on the bill, as it now stands, the complainant can equitably require this removal.

A court of equity does not invariably enforce such covenants, and there are several classes of cases in which the remedy by injunction is refused. Two of these classes may be specially mentioned, as claimed to be applicable here—*first*, where the person imposing the restriction has allowed or acquiesced in material violations of the covenant or restriction, thus waiving the covenant *pro tanto;* and *second*, where the party injured has not made prompt application for the relief, and has permitted money to be expended. In these cases the party otherwise entitled to the benefit of the covenant cannot apply for an injunction, and whether there has been such waiver or laches depends upon the circumstances of the particular case. These rules are illustrated in the following leading English cases: *Roper* v. *Williams,*

*1 Turn. & R. 18; Peek* v. *Matthews, L. R. 3 Eq. Cas. 515 (1867)*, and *German* v. *Chapman, L. R. 7 Ch. Div. 271 (1877)*.

In *Roper* v. *Williams* an injunction to restrain the breach of a covenant that buildings should be erected upon a general plan, was refused by Lord Eldon, upon the ground that the covenantee had acquiesced in a partial deviation from the plan, and had not made immediate application to the court for an injunction. On the first point the lord-chancellor (at *p. 22*) says:

"It is not a question of mere acquiescence, but in every instance in which the grantor suffers grantees to deviate from a general plan intended for the benefit of all, he deprives others of the right which he had given them to have the general plan enforced for the benefit of all. In such cases, I have always understood, this court will leave the parties to their remedy at law. There is another view in which the case may be considered. Every relaxation which the plaintiff has permitted in allowing houses to be built in violation of the covenant, amounts, *pro tanto*, to a dispensation of the obligation intended to be contracted by it. Very little, in cases of this nature, is sufficient to show acquiescence, and courts of equity will not interfere unless the most active diligence has been exerted throughout the whole proceeding.

"In every case of this sort the party injured is bound to make immediate application to the court in the first instance, and cannot permit money to be expended by a person, even though he has notice of a covenant, and then apply for an injunction. Taking all the circumstances together, the permission to build contrary to the covenant, and the laying by four or five months before filing the bill, this is not a case in which a court of equity has the right to interfere by injunction, but the plaintiff must be left to his remedy at law."

In *Peek* v. *Matthews*, the same rule as to acquiescence in violations of the general plan and as to delay was applied to a vendor and in favor of a vendee, who had received his deed, after the violations by other grantees had been allowed, and even in the face of the express covenant with the vendor, made in his deed. The vendor was left to his remedy at law on the cove-

Trout v. Lucas.

nant, and was denied the relief which a court of equity grants, as based on the *continuance* of a common benefit.

In *German* v. *Chapman, supra,* it was held that the violation must be material and such as to prevent the general plan from being carried out, and that the materiality of the violation was to be determined by the circumstances of each case.

See, also, *2 Pom. Eq. Jur. 817* and cases cited, as to the effect of delay and estoppel by acquiescence, in cases where injunctions, either preliminary or final, are applied for to enforce rights which are purely equitable.

The facts in the present case material to this question of waiver or laches are these: It appears by the bill that John Lucas erected his hotel and encroached on the building line, while the company and Ward, the grantors of complainant, were the owners of the remaining land in block 21, which was intended to be benefited, and, so far as appears by the bill, no objection was made by either of these then owners, nor is any explanation given in the bill of their failure to object. Those who are the owners of the remaining lands benefited by the restriction must be the persons who, at the time of the violation of the restriction, are entitled to call upon the court of equity to enforce the covenant, and must have, as such owners, the right to waive, acquiesce in or object to the violation; and they must, on the other hand, be subject to the liabilities or penalties resulting to owners or parties injured who acquiesce in a violation. One of these penalties has been declared to be that, after such acquiescence in a material violation by one or more of the grantees, the court of equity will not enforce the restriction even against a subsequent purchaser who has entered into a direct covenant therefor with the grantor. This was the decision in *Peek* v. *Matthews, supra,* where a vendor inserted covenants in the deed of each purchaser of lots for building only in a specified manner, and permitted, without interference, material breaches of the covenant to be committed by some of the purchasers. It was held that the vendor was not entitled to an injunction against violation of the covenant by a purchaser who had taken his deed for his lot after the breaches had been committed on the

others.    In this case, also, the covenant in the deed was not only
with the grantor, but was expressly declared to be a covenant
between all the purchasers *inter sese;* but the court declared that,
so far as the right to invoke the aid of a court of equity by injunc-
tion was concerned, this made no difference.    " The vendor in
such cases, stipulating for the benefit of himself and others,"
says Vice-Chancellor Wood (at *p. 518*), " as a *quasi*-trustee for
them, is bound to enforce the covenant as much against one as
against the other.    The court will not," he further says, " grant
specific performance of an arrangement which can only be carried
out in part.    The thing must be enforced *in toto* or not at all."
In *German* v. *Chapman, supra,* the correctness of the principle
stated in *Peek* v. *Matthews* was recognized, but it was held that
the alleged violation must be, in fact, an interference with the
general scheme, and that the rule would not be applied to the
facts in that case.

The materiality of the violation by Lucas is not only admit-
ted, but its materiality constitutes the basis of the bill; and as
to the hotel building proper, the erection has been allowed to
stand without objection by the complainant's grantors, who were
owners, and persons entitled to object, for eight years from 1878
to 1886, and by the complainant himself from February, 1886,
to June, 1889.    And when complainant purchased his first lots,
in February, 1886, the tower was completed, either before his
purchase or shortly after, and no objection appears to have been
made by him to the erection.    The allegation in the bill, " that
it was while he was building his said cottages [in 1887], the com-
plainant discovered the said *hotel building* encroached on the said
twenty-five feet," must be considered as applying to the hotel
building and not to the " octagon tower."    As to the tower, the
projection is so evident and notorious that it is doubtful whether
the above allegation, if intended to apply to this, could be con-
sidered as any foundation for relief, even on a demurrer.

The complainant, therefore, in this case took title to four of
his lots from the company, with actual notice of the erection of
the hotel building for years prior to that time, and must be held
chargeable with the laches of the company up to that time, and

for his own laches for three years longer. And in the absence of any allegations in the bill sufficient to overcome the effect of the delay of the company and of the complainant, in attempting to enforce the covenant and their apparent acquiescence, there can be no relief. Laches, lapse of time or acquiescence appearing upon the face of the bill itself, are grounds of demurrer and a bar to relief. *1 Dan. Ch. Pr. (6th ed.) 560 note a,* and cases cited.

As to the octagon tower, the bill does not show clearly whether this was erected before or after complainant's first purchase of the four lots from the company, on February 1st, 1886.

The allegation is that, " in the winter of 1885 and 1886," Lucas made this addition. If the company owned the lots, they had the right to object to the erection and apply at once to the court for an injunction restraining it. If the complainant then owned it, he had the same right; and, in the absence of any allegations in the bill, sufficiently explaining this apparent acquiescence in the erection for over three years and his laches in filing his bill, relief must also be denied as to the removal of this portion of the building.

The complainant's counsel, in answer to the effect of laches and acquiescence on the right to enforce complainant's rights by mandatory injunction, insists that the rights of the complainant over the Lucas lot are not merely equitable rights, but that the lots of complainant are to be treated as dominant tenements having strictly legal easements of prospect over the Lucas lot as servient tenements, and that the rights of complainant, therefore, are not destroyed by mere acquiescence or by any delay short of the time necessary to acquire an estate by prescription.

If this be the true nature of complainant's rights, then they may not be barred by mere delay or acquiescence short of twenty years, but even admitting this, the granting of the equitable remedy now applied for does not follow, for the equitable remedy of injunction or removal may be denied by reason of delay or acquiescence, even though the legal right to proceed for breach of the covenant is admitted.

This was the situation in *Roper* v. *Williams* and *Peek* v. *Mat-*

24

*thews, supra.* Where the legal right was admitted, relief was denied in equity and the complainant left to his remedy at law. And where the legal right of the complainant in such cases is doubtful, an additional objection to granting the extraordinary equitable relief arises, and the right must be first settled at law.

The easement here is claimed to arise in favor of the complainant's lots and as appurtenant thereto, either by virtue alone of the covenant in the Lucas deed from the complainant's grantor or by this covenant, supplemented by proof, showing the general building plan adopted for all the lots in block 21 on Atlantic avenue. This covenant in the Lucas deed does not refer to the complainant's lots or any other lands than those conveyed, and, read by itself alone, it is, to say the least, very doubtful whether it has any such scope or effect as complainant claims. And it is also doubtful whether, for the purpose of establishing a legal easement in favor of the complainant's lots over the Lucas lots, by reason of the existence of a general plan, parol evidence, or any evidence *dehors* the deed, is admissible. The cases which have enforced obligations restricting buildings, *as between different purchasers* of a tract embraced in a general scheme, proceed, as Chief-Justice Beasley points out, in *Brewer* v. *Marshall, 4 C. E. Gr. 537, 543 (Errors and Appeals, 1868),* " upon the principle of preventing a party having knowledge of the just rights of another from defeating such rights, and not upon the idea that the engagements enforced create easements, or are of a nature to run with the land."

In this state of doubt as to complainant's legal title, certainly no injunction could be granted without the previous establishment of this legal right in a court of law, if his case is one of strictly legal right. If the complainant has an easement or other legal rights derived from the covenant, he still has his remedy at law, and whether they are purely equitable or legal, enforcement of them by injunction, on the present bill, is barred by delay and acquiescence apparent on the bill and not sufficiently explained or accounted for. The demurrer will, therefore, be sustained on these grounds.